IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | **FILE UNDER SEAL** |
| | ) | |
| Plaintiff, | ) | Cr. No.: 22-20049 TLP |
| | ) | |
| vs. | ) | **18 U.S.C. § 2** |
| | ) | **18 U.S.C. § 641** |
| **RAYMOND EARL VALLIER,** | ) | **18 U.S.C. § 1028A** |
| | ) | |
| Defendant. | ) | Notice of Forfeiture |

# I N D I C T M E N T

**THE GRAND JURY CHARGES:**

At all times material to this Indictment:

## The CARES Act Provider Relief Fund

1. In March 2020, Congress passed the Coronavirus Aid, Relief, and Economic Security ("CARES") Act, which was designed to provide emergency financial assistance to the millions of Americans suffering due to the COVID-19 pandemic.

2. The CARES Act appropriated monies to help health care providers ("Providers") that were financially impacted by COVID-19, as well as to provide care to patients who were suffering from COVID-19 and compensate providers for the cost of that care (hereinafter, the "Provider Relief Fund").

3. The United States Department of Health and Human Services ("HHS"), through its agency, the Health Resources and Services Administration ("HRSA"), oversaw and administered the Provider Relief Fund.

4. In order to rapidly provide funding to Providers during the pandemic, HRSA distributed payments under the CARES Act Provider Relief Fund ("Provider Relief Fund Payment" or "Payment") to Providers who (a) billed Medicare fee-for-service (Parts A or

B) in Calendar Year 2019; (b) provided, after January 31, 2020, diagnoses, testing, or care for individuals with possible or actual cases of the coronavirus; (c) were not currently terminated from participation in Medicare or precluded from receiving payment through Medicare Advantage or Part D; (d) were not currently excluded from participation in Medicare, Medicaid, and other Federal health care programs; and (e) did not currently have Medicare billing privileges revoked. Providers meeting these criteria automatically received the Provider Relief Fund Payment and did not have to apply for the funding but were required to comply with the terms and conditions of the Provider Relief Fund if they retained such funding.

5. Provider Relief Fund recipients attested to their compliance to the terms and conditions in two ways. First, Provider Relief Fund recipients were notified that they could submit an attestation through an online portal confirming receipt of the funds and agreeing to the terms and conditions of the payment ("Terms and Conditions"). Second, recipients were notified that if they kept the money for a period that exceeded 90 days from receipt that they were deemed to have accepted the Terms and Conditions of the Provider Relief Fund.

6. Providers who attested to the Terms and Conditions acknowledged that their commitment to full compliance with the Terms and Conditions was material to the HHS Secretary's decision to disburse Provider Relief Fund Payments to them. Providers further acknowledged that non-compliance with any Term or Condition could cause the HHS Secretary to recoup some or all of the Payment.

7. Providers who attested to the Terms and Conditions certified that after January 31, 2020, they provided diagnoses, testing, or care for individuals with possible or actual cases of COVID-19.

8.     Providers who attested to the Terms and Conditions also certified that the Payment would only be used to prevent, prepare for, and respond to COVID-19, and that the Payment would reimburse the recipient only for health care related expenses or lost revenues that were attributable to COVID-19.

9.     Individuals who attested to the Terms and Conditions on behalf of Providers certified that they had the legal authority to act on behalf of the Provider that received payment under the Provider Relief Fund.

10.    Providers who attested to the Terms and Conditions also certified that all information provided relating to the Payment was true, accurate, and complete, and that any deliberate omission, misrepresentation, or falsification of any information was punishable by, *inter alia*, criminal penalties, including but not limited to imprisonment.

11.    Providers who attested to the Terms and Conditions also certified that they would maintain appropriate records and cost documentation to substantiate the reimbursement of costs under the disbursement.

**The Defendant and Relevant Entities and Individuals**

12.    North Delta Hospice and Palliative Services, LLC ("North Delta Hospice") was a hospice care center that operated in DeSoto County, Mississippi, from approximately August 2006 until approximately September 2019.

13.    Defendant **RAYMOND EARL VALLIER**, of Fayette County, Tennessee, owned and operated North Delta Hospice until on or around June 20, 2019, when he ceded ownership and control to Individual 1.

14.    Individual 1, of Sunflower County, Mississippi, was the sole owner and controlling member of North Delta Hospice as of June 20, 2019. Individual 1 operated North Delta Hospice until he passed away on February 29, 2020.

**Relevant Financial Accounts**

15.     North Delta Hospice held business account x9979 at Financial Institution 1 ("North Delta Hospice Account").  **VALLIER** controlled and was a signatory on the North Delta Hospice Account.

16.     **VALLIER** held, controlled, and was a signatory on account x3009 at Financial Institution 2 in the name of Vallier Estates, LLC ("Vallier Estates Account").

**Manner and Means**

17.     In or around September 2019, North Delta Hospice ceased seeing patients. By September 23, 2019, North Delta Hospice had ceased submitting claims to Medicare and Medicaid.

18.     On or about March 11, 2020, after North Delta Hospice had ceased treating patients, the first known coronavirus case in the State of Mississippi was diagnosed.

19.     On or about April 10, 2020, $107,568.03 from the Provider Relief Fund was deposited into the North Delta Hospice Account.

20.     Upon the Provider Relief Fund Payment being deposited into the North Delta Hospice Account, and despite knowing that no diagnoses, testing, or care was provided to individuals with possible or actual cases of COVID-19 after January 31, 2020, and that the Payment would not be used to prevent, prepare for, and respond to coronavirus or for health care related expenses or lost revenues that were attributable to coronavirus, on or about April 13, 2020, **VALLIER** transferred $21,144.54 from the North Delta Hospice Account to the Vallier Estates Account and issued a check from the North Delta Hospice Account to himself in the amount of $58,000.00.

21.     On or about April 16, 2020, **VALLIER** submitted or caused to be submitted a false and fraudulent provider relief attestation on behalf of North Delta Hospice in the

4

name of Individual 1, who was at that time deceased, that agreed, among other things, that North Delta Hospice would use the Provider Relief Fund Payment for the diagnosis, testing, or care of individuals with possible or actual cases of COVID-19 after January 31, 2020.

## COUNT 1
### Theft of Public Money, Property, or Records
### (18 U.S.C. §§ 641 and 2)

22. Paragraphs 1 through 21 of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

23. From on or about April 10, 2020, and continuing through on or about April 16, 2020, in Fayette County, in the Western District of Tennessee, and elsewhere, the defendant,

**RAYMOND EARL VALLIER,**

aided and abetted by others, and aiding and abetting others known and unknown to the Grand Jury, did knowingly and willfully embezzle, steal, purloin, and convert to his own use or the use of another money or a thing of value greater than $1,000 from HHS, a department of the United States. That is, **RAYMOND EARL VALLIER** knowingly and willfully embezzled, stole, purloined, and converted, to his own use and the use of others, $107,568.03 from the Provider Relief Fund, which he unlawfully and without authority attested to HHS would be used by North Delta Hospice in conjunction with pandemic relief efforts.

In violation of Title 18, United States Code, Sections 641 and 2.

# COUNT 2
## Aggravated Identity Theft
### (18 U.S.C. §§ 1028A and 2)

24. Paragraphs 1 through 23 of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

25. On or about April 16, 2020, in Fayette County, in the Western District of Tennessee, and elsewhere, the defendant,

**RAYMOND EARL VALLIER,**

aiding and abetting others, and aided and abetted by others known and unknown to the Grand Jury, did knowingly use, without lawful authority, a means of identification of another person, that is, the name of Individual 1, during and in relation to a felony violation enumerated in Title 18, United States Code, Section 1028A(c), that is, theft of public money, property, or records, in violation of Title 18, United States Code, Section 641, as charged in Count 1 of this Indictment and incorporated herein.

In violation of Title 18, United States Code, Sections 1028A(a)(1) and 2.

## NOTICE OF CRIMINAL FORFEITURE
### (18 U.S.C. § 981, 21 U.S.C. § 853, and 28 U.S.C. § 2461)

26. The allegations contained in Count 1 of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Section 981.

27. Upon conviction of Count 1 of the Indictment, the defendant shall forfeit to the United States pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), all property, real and personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the violations, including but not limited to a sum of money equal to the amount of the gross proceeds of the offenses.

28. If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

a. cannot be located upon the exercise of due diligence;

b. has been transferred or sold to, or deposited with, a third party;

b. has been placed beyond the jurisdiction of the court;

c. has been substantially diminished in value; or

d. has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p) as incorporated by 28 U.S.C. § 2461(c), to seek forfeiture of any other property of the defendant up to the value of the forfeitable property described above.

**A TRUE BILL:**

_____
**F O R E P E R S O N**

**DATED: _____**

_____
**JOSEPH C. MURPHY, JR.
UNITED STATES ATTORNEY**

_____
**JOSEPH S. BEEMSTERBOER
ACTING CHIEF
CRIMINAL DIVISION, FRAUD SECTION**